## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| TUBIOUS SHIPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-02084-BCL-tmp |
| | ) | |
| BNSF RAILWAY CO., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant BNSF Railway Company's ("BNSF") Motion for Summary Judgment. Doc. 29. Related to that Motion are an Amended Memorandum of Facts and Law in Support of Summary Judgment (Doc. 30) and a First Amended Exhibits to Its Motion for Summary Judgment (Doc. 32). To the extent BNSF is moving to file its Amended Memorandum and First Amended Exhibits, its unopposed motions to do those things are **GRANTED.** For the reasons set forth below, BNSF's Motion for Summary Judgment is **DENIED**.

## BACKGROUND

On January 27, 2025, Plaintiff filed the present action asserting a claim arising under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20109(b)(1). Doc. 1. Plaintiff worked for Defendant as a carman for more than fifteen years. Doc. 1 at 2. Carmen are responsible for building, inspecting, and repairing railroad cars and locomotive cabs. Doc. 63 at 1. Outbound trains must be tied down prior to inspection by a carman pursuant to Defendant's rules and federal regulations. *Id.*; Doc. 33 at 5; Doc. 36 at 1. To tie down a train, the train's crew must walk the

train's length and manually apply a sufficient number of the train car's handbrakes. Doc. 1 at 2; Doc. 36 at 1. This prevents the train car from rolling while a carman is conducting their inspection. *Id*. at 1-2.

On July 7, 2023, Plaintiff found that an outbound train had not been tied down. Doc. 1 at 3. He reported the safety concern to his supervisor, Katherine Pink. *Id*.; Doc. 33 at 7. Plaintiff proceeded to record a video of the train on his phone which he sent to Pink. Doc. 33 at 7. The video showed Plaintiff operating a motor vehicle while using an electronic device. *Id*. Pink believed that the video recording showed that Plaintiff was violating serious safety rules by using an electronic device while operating a motor vehicle; she therefore forwarded the video to general foreman Christopher Covey for guidance on how to address the safety rule violation. *Id*.

Pink sent Plaintiff to speak with Covey. *Id*. During this meeting, Covey requested that Plaintiff submit to a drug test. *Id*. The parties agree that this resulted in Plaintiff using some profanity, but they disagree on the context. BNSF claims that Plaintiff "cursed at Covey" and said that he could leave his urine sample "on your desk." Doc. 33 at 9. Plaintiff asserts that when Covey told Plaintiff he was being pulled away from work because of his video, Plaintiff responded that "it was because he was trying to report a safety violation" and that he was "'tired of y'all fucking with him' in response from being pulled from service for a drug test." Doc. 3 at 9. Plaintiff also says that he told Covey that, because he had a bathroom in his office, Plaintiff could do the test there and leave the sample on Covey's desk. Doc. 33 at 9.

The parties agree that BNSF's Mechanical Safety Rules prohibit: (1) driving while handling electronic devices and operating vehicles unsafely, and (2) being "[d]iscourteous." Doc. 33 at 1-2. The parties also agree that violation of those rules could lead to Plaintiff's dismissal. Doc. 33 at 11, 14.

In addition, the parties agree that following the incidents in question, Defendant initiated formal disciplinary proceedings against Plaintiff. Doc. 33 at 9.  Pursuant to the governing collective bargaining agreement, Defendant issued two separate notices of investigation to the Plaintiff: the first regarding the alleged unsafe operation of a motor vehicle and use of an electronic device (MSR 1.7 and 12.1), and the second regarding alleged discourteous conduct (MSR 28.6). *Id*. at 10, 12. On July 27, 2023, Defendant conducted two hearings concerning the charged rule violations. *Id*. at 10, 12.

Following the hearings, the records were reviewed by Policy for Employee Performance Accountability ("PEPA") Director John Murphy, who recommended dismissal. *Id*. at 11, 14. These recommendations were then transmitted to Mahoney, who performed his own review of the investigation records. *Id*. at 12, 14. Mahoney made the final decision to terminate the Plaintiff's employment. *Id*. at 12, 14.  On August 10, 2023, the Plaintiff was officially dismissed from service based on the findings of violations of MSR 1.7, 12.1, and 28.6. *Id*.

As noted, Plaintiff filed this lawsuit on January 27, 2025, claiming that BNSF violated the FRSA, by taking unfavorable personnel action against him for the protected activity of reporting a safety violation—the improper or insufficient use of handbrakes. 49 U.S.C. § 20109(b)(1); Doc. 1. Defendant filed the present Motion for Summary Judgment on March 3, 2026. Doc. 29. Defendant primarily argues that Plaintiff was terminated because he violated internal policies prohibiting the use of electronic devices while operating a motor vehicle and being discourteous— not for protected activity. Doc. 29-3 at 3.  Plaintiff filed his Response on March 30, 2026. Doc. 33.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When the moving party has carried its burden…its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *Feagin v. Mansfield Police Dep't*, 155 F.4th 595, 612 (6th Cir. 2025). "A dispute of material fact is genuine so long as the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Kirilenko-Ison v. Bd. Of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020).

In deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587. Courts do not make credibility determinations or weigh the evidence when deciding a motion for summary judgment. *See Martinez v. Cracker Barrell Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013).

### **LEGAL ANALYSIS**

"FRSA is a whistleblower protection law." *James v. Norfolk S. Ry. Co.*, No. 24-3275, 2025 WL 2049553, at *10 (6th Cir. July 22, 2025). The FRSA states in pertinent part:

> A railroad carrier engaged in interstate or foreign commerce, a contractor or a subcontractor of such a railroad carrier, or an officer or employee of such a railroad carrier, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done or about to be done to provide information, directly cause information

4

to be provided, or otherwise directly assist in any investigation regarding any conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security…

49 U.S.C.A. § 20109(a)(1). "Courts employ a burden-shifting framework for FRSA claims at the summary judgment stage." *James*, No. 24-3275, 2025 WL 2049553, at *10 (*citing Consol. Rail Corp. v. U.S. Dep't of Lab.*, 567 F. App'x 334, 337 (6th Cir. 2014)).  To make a prima facie showing of retaliation under FRSA, an employee of a railroad carrier must show:

(1) he engaged in a protected activity;
(2) the employer knew of the protected activity;
(3) the employee suffered unfavorable personnel action; and
(4) the protected activity was a contributing factor.

*Id*. "The employee bears the initial burden of showing this prima facie case by a preponderance of the evidence, after which the burden shifts to the employer to show by clear and convincing evidence that it would have taken the same adverse action absent protected behavior." *Id*.

BNSF concedes that Plaintiff engaged in protected activity and that it, the employer, knew of the protected activity. Doc. 33 at 16. The issues remaining with respect to Plaintiff's prima facie case are whether Plaintiff suffered unfavorable personnel action, and whether the protected activity was a contributing factor in that unfavorable action.  BNSF also raises a "same action" affirmative defense, invoking the FRSA's allowance of an affirmative defense to an employer who can prove "by clear and convincing evidence that [they] would have taken the same unfavorable personnel action in the absence of the protected activity." 49 U.S.C. § 42121(b)(2)(B)(iv).

### 1. Unfavorable Personnel Action

BNSF first argues that drug testing is not an unfavorable personnel action because BNSF routinely drug tests employees for suspected serious safety rule violations. Doc. 29-3 at 5. BNSF's argument is both wrong on the record and too narrow to support summary judgment. First, while the parties do very little to brief this point, BNSF's argument fails because the FRSA broadly

5

prohibits "discharge[ing], demot[ing], suspend[ing], reprimand[ing], or *in any other way discriminat[ing]*" against an employee based on his protected activity.   49 U.S.C. § 20109(a) (emphasis added).  Here, there is testimony in the record that, viewed in the light most favorable to Plaintiff as the non-moving party, would allow the inference that drug and alcohol testing is not a standard result for any suspected serious rule violation: Ms. Pink testified to three sorts of situations in which drug and alcohol testing might occur, and did not list the occurrence of a safety violation alone as one of those situations. Doc. 33-1 at 8-9.  So, on this record, a jury could find that a drug test itself qualified as an adverse employment action—a form of discrimination.

Second, BNSF understates the scope of what qualifies as an adverse personnel action under the FRSA. As just noted, the FRSA explicitly prohibits railroad carriers from not only terminating employees but also "demoting, suspending, reprimanding, or in any other way" discriminating against an employee. 49 U.S.C. § 20109(a). It is undisputed that Plaintiff was suspended, before being ultimately terminated on August 10, 2023. Doc. 33 at 12. Furthermore, while identifying an "adverse employment action" is not part of the FRSA analysis, termination is a quintessential adverse employment action. *See Moore v. Coca-Cola Bottling Co. Consol.*, 113 F.4th 608, 623 n.4 (6th Cir. 2024). Thus, even if drug testing did not qualify as an adverse employment action, a reasonable jury could still find that Plaintiff suffered unfavorable personnel action.

## 2.  Contributing Factor

Defendant's primary argument is that Plaintiff's protected activity, reporting safety concerns, was not a contributing factor in its decision to terminate him. Doc. 29-3 at 10.  "[T]he contributing factor standard has been understood to mean 'any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision.'" *Consol. Rail Corp. v. U.S. Dep't of Lab.*, 567 F. App'x at 338. "Plaintiff can demonstrate a contributing factor 'through

either direct or circumstantial evidence.'" *Johnson v. Grand Trunk W. R.R. Co.*, 454 F. Supp. 3d

667, 674 (E.D. Mich. 2020). Circumstantial evidence may include:

    i.   temporal proximity;
    ii.  indications of pretext;
    iii. inconsistent application of an employer's policies;
    iv. shifting explanations for an employer's actions;
    v.  antagonism or hostility toward a complainant's protected activity;
    vi. falsity of an employer's explanation for the adverse action taken; and
    vii. change in the employer's attitude toward the complainant after he engages
        in protected activity.

*Id*. The contributing factor analysis in this case turns on circumstantial evidence.

To begin, BNSF mis-frames the standard, arguing that it is off the hook so long as it

believed in good faith that Plaintiff committed the infractions—using a cell phone while operating

a vehicle and being discourteous.  Doc. 30 at 5. But the employer's good faith belief is not a cloak

of immunity, because (as just mentioned) a contributing factor is "any factor which, alone or in

connection with other factors, tends to affect in any way the outcome of the decision." *Consol.*

*Rail Corp.*, 567 F. App'x at 338; an employer can believe in good faith that an employee violated

a rule and still take adverse action against the employee for another reason or have the employee's

protected activity at least contribute to the decision to take adverse action. *See Frost v. BNSF Ry.*

*Co.*, 914 F.3d 1189, 1196 (9th Cir. 2019).

It remains to apply the governing standard to the record in this case.  The parties complicate

the analysis by either focusing overwhelmingly on Plaintiff's termination (BNSF) or gesturing

broadly at the entire process without specifying which particular adverse actions were influenced

by his protected activity. (Plaintiff).  But on the record here, Plaintiff has enough evidence to create

a jury issue on his prima facie case.

Consider first the issue of drug testing, which immediately followed Plaintiff's protected

activity in sending the video. Temporal proximity between the protected conduct and the adverse

employment action is at least some circumstantial evidence that the protected activity was a factor in the adverse personnel action—at least in some cases.  Query how informative temporal proximity is here, where the protected activity itself was evidence of a rule infraction—so that it is difficult to say anything about what factors went into the disciplinary decision from temporal proximity alone.  But, here, Plaintiff also can point to Pink's testimony, from which a jury could conclude that drug testing was not usually carried out for safety violations, and that the protected activity therefore played a factor in the decision to impose drug testing.  And that is enough to preclude summary judgment.

What then, of Plaintiff's suspension and termination following his exchange in response to the drug testing? While a closer call, this too presents a jury issue.  If Plaintiff's protected activity, alone or in combination with other factors, tended to affect the outcome of the decision to drug test petitioner, it can reasonably be concluded that it likewise—again, alone or in combination with other factors—tended to affect the suspension and termination that followed not long thereafter. *Consol. Rail Corp.*, 567 F. App'x at 338.  On the record in this case, BNSF's counterarguments, which focus on its reasons for terminating Plaintiff, go to BNSF's affirmative defense, not Plaintiff's prima facie case.

### 3. BNSF's Affirmative Defense

"If Plaintiff manages to prove a contributing factor, BNSF is still entitled to summary judgment if it proves by clear and convincing evidence that it would have made the same decision absent Plaintiff's protected activity." *Walker v. BNSF Ry. Co.*, No. 2:25-CV-02106-TLP-CGC, 2026 WL 185078, at *6 (W.D. Tenn. Jan. 23, 2026) (*citing Consol. Rail Corp.*, 567 F. App'x at 337). "Clear and convincing evidence is a not a light burden." *Blanchard v. City of Memphis, Tennessee*, No. 2:17-CV-2120-JPM-EGB, 2018 WL 11416671, at *14 (W.D. Tenn. Oct. 26,

8

2018). And because that heavy burden applies at summary judgment, the question becomes "whether the evidence in the record could support a reasonable jury finding" that *BNSF* has not shown by clear and convincing evidence that it would have taken the same action even absent Plaintiff's protected activity. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

With respect to the decision to drug test Plaintiff, the answer is plainly yes. Due to Ms. Pink's testimony suggesting that drug tests were not generally imposed for safety violations, a reasonable jury could conclude that BNSF would not have drug tested petitioner in the absence of his protected activity.

BNSF likewise cannot carry its burden with respect to its suspension and then termination of Plaintiff. In assessing whether a defendant would have taken an adverse personnel action even absent the employee's protected conduct, courts consider the following non-exclusive factors:

> (1) whether the railroad has written policies addressing the alleged misconduct,
> (2) whether the railroad followed applicable investigatory and disciplinary procedures,
> (3) whether the dismissal was approved by others in senior management,
> (4) whether the dismissal was upheld on appeal,
> (5) the temporal proximity between the non-protected conduct and the adverse actions,
> (6) whether the railroad consistently enforces the policies and rules at issue; and
> (7) the independent significance of the non-protected activity.

*Dafoe v. BNSF Ry. Co.*, 164 F. Supp. 3d 1101, 1115–16 (D. Minn. 2016) (internal citations omitted); *accord Gasiorowski-Watts v. CSX Transportation, Inc.,* No. 1:23 CV 1043, 2024 WL 4288014, at *7 (N.D. Ohio Sept. 25, 2024). Many of these factors plainly support BNSF: It followed investigatory and disciplinary procedures, the dismissal was approved by higher ups, the adverse actions were close in time to the non-protected activity (although, again, that is relatively

9

unilluminating here), and the non-protected activity—safety violations—clearly have independent significance.

But this is not a game of factor counting, and a reasonable jury could find from the record here that BNSF would not have suspended or terminated Plaintiff had he not engaged in protected activity. For example, while BNSF says that Plaintiff's supervisor invariably removes employees from service pending an investigation (Doc. 30 at 9), the cited source does not actually say that; rather, it contains a supervisor's testimony that Plaintiff's suspension resulted from his exchange with Mr. Covey—from which a reasonable jury could conclude that the suspension did not occur *automatically* due to an investigation of rule violations, as BNSF claims. Doc. 33 at 3; 33-3 at 3. And Mr. Hughes, a union representative, testified that Mr. Covey had already decided to remove Plaintiff from service even before the incident concerning the drug test—a conflict in the record and with BNSF's stated position which bolsters the permissible inference that the suspension was not automatic based on an infraction. Doc. 33-4 at 3. In addition, BNSF notably points to no evidence that it reflexively suspended others accused of similar violations. All of which means that a reasonable jury could conclude that BNSF would not have suspended Plaintiff in the absence of his protected conduct, or at least that BNSF has not proved by clear and convincing evidence that it would have done so.

Plaintiff's termination calls for a similar conclusion. The record contains evidence that others who committed similar rule violations were not terminated, which allows for an inference that something other than the rule violations must have driven Plaintiff's termination. Doc. 33-2 at 4-5; Doc. 33-3 at 4. *See Dafoe v. BNSF Ry. Co.*, 164 F. Supp. 3d at 1115–16 (deeming consistency of enforcement a relevant factor). While BNSF suggests that these comparators were not terminated because they did not have a disciplinary history similar to Plaintiff's (Doc. 35 at 7),

that sort of argument ignores that BNSF has the burden of proving its affirmative defense by clear and convincing evidence: To the extent the parties wish to rely on comparator evidence, it was not Plaintiff's burden to come forward with sufficient comparators and prove their similarity; rather, it was BNSF's burden (again, by clear and convincing evidence) to show the similarity of comparators who were terminated.  Beyond that, debates about the similarity of the comparators to Plaintiff and purported similarities or differences in punishments are matters for the jury's consideration.

For all of these reasons and based on BNSF's burden under the clear and convincing evidence standard, BNSF is not entitled to summary judgment on its affirmative defense.

### 4.  Punitive Damages

BNSF also argues that it is entitled to summary judgment on Plaintiff's request for punitive damages. BNSF does not argue that punitive damages are unavailable in a case or on a claim of this sort. Rather, it argues only that the record shows that its conduct was not sufficiently blameworthy to warrant punitive damages. Doc. 30 at 18-19.

"An award of punitive damages is appropriate where the employer intentionally, recklessly, or callously disregards the employee's rights under the FRSA." *Norfolk S. Ry. Co. v. United States Dep't of Lab.*, No. 21-3369, 2022 WL 17369438, at \*10 (6th Cir. Dec. 2, 2022). "[T]he purpose of punitive damages is to punish the defendant for his willful or malicious conduct *and* to deter others from similar behavior." *King v. Zamiara*, 788 F.3d 207, 217 (6th Cir. 2015).

Based on everything said so far, BNSF is not entitled to summary judgment on punitive damages.  Viewed in the light most favorable to Plaintiff as the non-movant, the record shows that BNSF retaliated against Plaintiff for protected activity, including termination of his employment, and hid its actions behind claimed safety violations which would not independently have led to the

adverse personnel actions suffered by Plaintiff. To be clear, that may not be the best or most likely conclusion from this record, but it is an available conclusion which is why Plaintiff's claim survives summary judgment.  And that conclusion reflects shocking conduct that a reasonable jury could find worthy of punitive damages.

### CONCLUSION

For the foregoing reasons, Defendant BNSF's Motion for Summary Judgment is **DENIED**.

**SO ORDERED**, this 17th day of April, 2026.

*s/Brian C. Lea*
BRIAN C. LEA
UNITED STATES DISTRICT JUDGE
